```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

ENGJELLUSHE BUKILICI,                :
                                     :
    Plaintiff,                       :
                                     :
    v.                               :    CASE NO. 3:15CV1777(DFM)
                                     :
CAROLYN W. COLVIN                    :
ACTING COMMISSIONER,                 :
SOCIAL SECURITY ADMINISTRATION       :
                                     :
    Defendant.                       :

## RULING ON PENDING MOTIONS

Plaintiff, Engjellushe Bukilici, seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB"). (R. 9-27.) Pending before the court are plaintiff's motion to reverse the decision of the Commissioner (doc. #14) and defendant's motion to affirm the decision of the Commissioner (doc. #16). For the following reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #14) is GRANTED and defendant's motion to affirm the decision of the Commissioner (doc. #16) is DENIED.[1]

I.  Background

On June 5, 2012, plaintiff filed an application for DIB alleging that she has been disabled since May 23, 2006, her

---

[1] This is not a recommended ruling. The parties consented to the jurisdiction of a magistrate judge.

onset date.  Her date last insured is December 31, 2009.[2] (R. 12-13.)  Plaintiff's application was denied initially and upon reconsideration. (R. 12.)  She requested review by an Administrative Law Judge ("ALJ").  The ALJ held hearings on May 5, 2014 and March 19, 2015, at which the plaintiff, represented by counsel, testified.  A vocational expert also testified.  On April 8, 2015, the ALJ issued a decision that plaintiff "was not under a disability within the meaning of the Social Security Act from May 23, 2006 through the date last insured." (R. 13.)  On October 16, 2015, the Appeals Council denied review of the ALJ's unfavorable decision. (R. 1-6.)  This action followed.

II.  The ALJ's Decision

The ALJ followed the sequential evaluation process for assessing disability claims.[3]  The ALJ found at step one that

---

[2] In order to qualify for DIB, a claimant must demonstrate a disability that began prior to the date last insured. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).  "If disability is not established prior to the date last insured, then the individual is not eligible for any Social Security disability benefit payments." 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:251 (2d ed.).  Accordingly, in this case, the plaintiff must show that she became disabled prior to December 31, 2009, her date last insured. (R. 13.)

[3] The five steps are:

(1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work

2

plaintiff had no substantial gainful employment since her alleged onset date through her date last insured of December 31, 2009. (R. 14.) At step two, the ALJ found that plaintiff has the severe impairments of cervical spine degenerative disc disease; post-traumatic stress disorder and post-concussive syndrome. (R. 14.) The ALJ found at step three that these impairments do not meet or medically equal a listed impairment. (R. 15.) The ALJ next determined that plaintiff retained the

---

    activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. §§ 404.1520 (a)(4)(i)-(v); 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on this last step. McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

Murillo v. Berryhill, 3:16cv403 (WIG), 2018 WL 1665691, at *4 n.2 (D. Conn. Apr. 6, 2018).

3

residual functional capacity ("RFC")[4] "to perform medium work[5] as defined in 20 C.F.R. § 404.1567(c) except that she was limited to simple, routine tasks (assuming normal work breaks over an eight-hour day); and she was limited to occasional, superficial contact with the public, co-workers and supervisors." (R. 17.) At step four, the ALJ determined that plaintiff was unable to perform her past relevant work through her date last insured. (R. 25.) At step five, considering plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that plaintiff could have performed. (R. 26.)

III. Standard of Review

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social

---

[4] Residual functional capacity is the most a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545.

[5] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567.

4

Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of

proof here and there in the record." Williams v. Bowen, 859 F.2d at 258.

IV. Discussion

Plaintiff's medical record is lengthy and complex: she has treated with emergency room physicians, internists, neurologists, neurosurgeons, psychiatrists, psychologists, and cardiologists, among others. (R. 96-144 and 495-974.)[6] She argues[7] that remand is warranted because the ALJ failed to follow the treating physician rule as to the opinions of her treating physicians and therapists.

Under the "treating physician rule," a treating physician's opinion is accorded controlling weight when it is "well-

---

[6] Despite the court's order (doc. #17) requiring the plaintiff "to make a good faith effort to stipulate with the defendant as to the relevant facts in compliance with (doc. #5) the standing order," the parties maintain that they could not agree on a single statement of facts. (Doc. #18 and #19.) Therefore, the court cites to the record throughout this opinion.

[7] The court notes that in several instances plaintiff does not provide complete case citations in accordance with Bluebook format, making it difficult to locate the cases cited. See, e.g., doc. #14-2 at 35-36, where plaintiff includes case citations such as "Armstrong v. Colvin, (E.D. Ark., 2014)" and "Schwanz v. Colvin (D. Or., 2014)." Such citations do not include a reference to a "published or unpublished source in which the case can be found" and a "pinpoint citation," if the case is found in a published source, or a "star page number," if the case is found in an unpublished source. See The Bluebook: A Uniform System of Citation, R. B10.1, at 10-14 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015). Plaintiff's counsel is reminded that she must provide complete case citations.

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2).[8] The ALJ must "give good reasons" for the weight accorded to the treating physician's opinion. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

If controlling weight is not given to a treating source's opinion, the ALJ must consider certain factors in determining the weight to be assigned. Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the

---

[8] The Social Security Act and the regulations regarding the "treating physician rule" discussed above, were amended effective March 27, 2017. The Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect. Maloney v. Berryhill, No. 16-CV-3899 (ADS), 2018 WL 400772, at *1 (E.D.N.Y. Jan. 12, 2018) (citing Lowry v. Astrue, 474 Fed.Appx. 801, 805 n.2 (2d Cir. 2012)).

7

opinion's consistency with the record; (5) the treating physician's specialization, if any; and (6) other factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(c)(2); see also Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015) ("[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider" these factors).

    A.  <u>Dr. Kaplove's April 17, 2014 Opinion</u>

The plaintiff first argues that the ALJ erred as to the April 17, 2014 opinion of her treating neurologist, Dr. Kaplove.[9] Dr. Kaplove began treating plaintiff on June 22, 2006, shortly after the plaintiff sustained her head injury. (R. 513-515.) He saw plaintiff at least five times between 2006 and 2014. (R. 513-515, 959-974.)

In his April 17, 2014 his opinion, Dr. Kaplove stated: "it is suspected that a head injury on May 23, 2006 triggered [plaintiff's] chronic headaches;" her headaches were "severe;" it is likely that the headaches contribute to the plaintiff's anxiety and depression; and that the plaintiff has reported

---

[9] The defendant asserts, without explanation, that Dr. Kaplove did not render a medical opinion, (doc. # 16-1 at 25). The record shows that Dr. Kaplove rendered at least two opinions. (R. 862 and 111-116.)  Additionally, Dr. Kaplove prepared at least five letters to the plaintiff's internist reflecting his examinations of the plaintiff between 2006 and 2014. (R. 513-515 and 959-974.)

8

headaches as described in the statement since December 31, 2009 or prior. (R. 862.)[10]

The ALJ did not discuss Dr. Kaplove's April 17, 2014 opinion at all in her decision and provided no explanation for her failure to do so. "The failure to refer to the opinion of one of [plaintiff's] treating physicians is itself grounds for remand." Smith v. Astrue, No. 10-CV-6018 (NGG), 2013 WL 1681146 at *2 (E.D.N.Y. Apr. 17, 2013).

    B. Dr. Boyd's Opinion

The plaintiff also contends that the ALJ erred in weighing the opinion of plaintiff's treating psychiatrist, Dr. Jeffrey Boyd.

Dr. Boyd treated the plaintiff from March 2007 through May 2008. (R. 22-23.) In March 2007, he opined that the plaintiff's fears "were quasi-paranoid in quality," that she suffered from "paranoid delusions," and diagnosed her with "psychosis not otherwise specified, [p]ost-traumatic stress disorder, [p]ost-

---

[10] Dr. Kaplove's April 17, 2014 opinion, although dated several years following plaintiff's May 23, 2006 injury, relates to plaintiff's treatment, status and symptoms going back as far as 2006. (R. 112.) Dr. Kaplove continued to treat plaintiff through October 2014. (R. 513-15, 959-74.) "[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence. Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003). See also Messina v. Comm'r of Soc. Sec. Admin., No. 17-1598, 2018 WL 4211602, at *3 (2d Cir. Sept. 5, 2018) (Summary Order)(quoting Byam v. Barnhart).

9

concussion syndrome since injury of May of 2006, [c]hronic pain syndrome, [and] [h]ypertension and/or hypercholesterolemia." (R. 586-88).

The ALJ discounted Dr. Boyd's assessments, saying that plaintiff's fears did not amount to paranoia. Rather, the ALJ reasoned, the plaintiff "assert[ed] realistic fears" because she spent time in a concentration camp in Albania as a teenager and young woman. The ALJ concluded there was an "absence of any frank psychosis." (R. 23.)

As an initial matter, the ALJ erred by failing to indicate the precise weight, if any, she gave Dr. Boyd's opinion. (R. 22-23.) See Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (failure to explain what weight, if any, the ALJ assigned to the opinion of plaintiff's treating physician is grounds for remand). In addition, the ALJ's explanation falls short of providing "good reasons" for not according Dr. Boyd's opinion controlling weight. See Greek v. Colvin, 802 F.3d at 375 ("The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.")(internal citations and quotations omitted).

C. Dr. Shah's Opinion and Dr. Goldstein's Opinion

The plaintiff next argues that the ALJ erred in evaluating the opinions of Dr. Arvind Shah, a psychiatrist, and Dr. Leonard Goldstein, a psychologist, who treated the plaintiff after her

10

date last insured.  Drs. Shah and Goldstein both opined that the plaintiff's disabling impairments pre-existed her date last insured.

As to these opinions, the ALJ stated that she:

> carefully considered the reports from [Arvind Shah, M.D.] dated April 24, 2014, which states that the claimant has been disabled since her 2006 injury (Exhibit 41 F); the report of Leonard Goldstein, Psy.D. dated April 16, 2014, setting forth that the claimant has an "extreme" limitation in virtually every area of work-related mental functioning (Exhibit 39F); and a report from Arvind Shah, M.D., dated November 9, 2012 stating that the claimant has been treated for depression and "mood disorder" with no improvement (Exhibit 15F).

(R. 224.)  The ALJ accorded them little weight, explaining that the opinions:

> are not persuasive given that these individuals had no treating relationship with the claimant in 2006; and even if there were such a treating relationship, there are no records connecting the claimant's 2006 injury to her current condition.  The gap of several years with no treatment simply cannot be overcome by a broad statement that her disability dates back almost ten years.  The undersigned has evaluated this evidence and finds that even though these reports are from specialists in the mental health field, these opinions are inconsistent and not supported by the medical evidence as a whole.  Therefore, these reports are more akin to advocacy opinions and thus are accorded little weight.

(R. 24-25.)

As the ALJ noted, the opinions are retrospective.  However, the fact that these physicians did not treat the plaintiff in 2006 is not dispositive:

11

> The Second Circuit has stated that the treating
> physician rule does not apply to a physician who
> treats a claimant after the insured period. See
> Monette v. Astrue, 269 F. App'x 109, 112 (2d Cir.
> 2008). "However, the fact that a treating physician
> did not have that status at the time referenced in a
> retrospective opinion does not mean that the opinion
> should not be given some, or even significant weight.
> Indeed, we have regularly afforded significant weight
> to such opinions." Id. at 113. But an ALJ may decline
> to give such an opinion significant weight where there
> is "substantial evidence that the opinion is
> contradicted by other evidence." Ibid.

Emerick v. Berryhill, No. 3:17CV00658 (JAM), 2018 WL 4300118, at *2 (D. Conn. Sept. 10, 2018); See also Ely v. Colvin, No. 14-CV-6641P, 2016 WL 315980. At *4 (W.D.N.Y. Jan. 27, 2016) ("[A]n ALJ should not discount a treating physician's opinion solely on the basis that it is retrospective, although the retrospective nature of the opinion is a factor that may be considered in evaluating the weight to accord an opinion."); Patel v. Astrue, 2010 WL 50933731, at *8 (E.D.N.Y. Dec. 10, 2010) ("The timing of [the doctor's] evaluation and treatment of [claimant] may bear on the weight to be accorded his opinions, but the Commissioner may not reject medical evidence simply because it includes retrospective assessments of a claimant's medical condition or functional capacity.").

Discounting the opinions of Dr. Shah and Dr. Goldstein solely because they were retrospective was error. The ALJ also reasoned that the opinions were not entitled to weight because there were no records "connecting the claimant's 2006 injury to

12

her current condition." This however fails to take into account Dr. Kaplove's April 17, 2014 opinion which does provide such a connection.[11]

For these reasons, the court remands this action to the ALJ for a re-weighing of the opinion evidence.[12]

---

[11] The ALJ did not have Dr. Kaplove's June 4, 2015 opinion, which post-dated the ALJ's decision and was submitted only to the Appeals Council. (R. 2, 111-116.) In this opinion, Dr. Kaplove stated that the plaintiff suffered a traumatic brain injury as a result of the May 2006 fall, which caused a cerebral artery occlusion and chronic daily headaches. (R. 112-14.) Dr. Kaplove stated that his findings were based on a "physical examination, MRI of the brain, head and neck, carotid ultrasound, sleep study, EMG, EEG [and] serology." (R. 114.) On remand, the ALJ should consider Dr. Kaplove's June 4, 2015 opinion. Lesterhuis v. Colvin, 805 F.3d 83, 87-88 (2d Cir. 2015).

[12] In light of the foregoing, the court need not reach the merits of plaintiff's remaining arguments. See Johnston v. Colvin, No. 3:13CV0073(JCH), 2014 WL 1304715, at *34 (D. Conn. Mar. 31, 2014) (where case reversed and remanded for re-weighing of evidence in light of ALJ's improper application of treating physician rule, district court need not reach merits of plaintiff's remaining arguments).

13

V. Conclusion

For these reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #14) is GRANTED and defendant's motion to affirm the decision of the Commissioner (doc. #16) is DENIED.

SO ORDERED at Hartford, Connecticut this 25th day of September, 2018.

                                        _____/s/_____
                                        Donna F. Martinez
                                        United States Magistrate Judge